SO ORDERED: October 28, 2015.



*Basil H. Lorch III*
**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In re: )<br>EASTERN LIVESTOCK CO., LLC,   )<br>             Debtor   )<br>_____)<br>)<br>JAMES A. KNAUER,   )<br>CHAPTER 11 TRUSTEE FOR   )<br>EASTERN LIVESTOCK CO., LLC.,   )<br>             Plaintiff,   )<br>)<br>             v.   )<br>)<br>GARY KRANTZ,   )<br>             Defendant.   )<br>_____) | Case No. 10-93904-BHL-11<br><br><br><br><br><br><br><br>Adv. No. 12-59052 |

**ORDER ON DEFENDANT'S
AMENDED MOTION FOR SUMMARY JUDGMENT**

This matter involves a dispute between the Plaintiff, James A. Knauer, Chapter 11 Trustee for Eastern Livestock Co., LLC. ["Trustee"] and the Defendant, Gary Krantz ["Krantz"] regarding payment for certain livestock delivered on or about October 15, 2010. The Trustee brought this adversary proceeding against Krantz on July 27, 2012, alleging preferential or

fraudulent transfers under sections 547 and 548 and seeking recovery under section 550. It is now before the Court on the **Amended Motion for Summary Judgment** (Doc. # 28) filed by Krantz on June 19, 2014, and was fully briefed on January 6, 2015.

Background

Sometime prior to the initiation of involuntary bankruptcy proceedings against it, Eastern Livestock Co, LLC ["Eastern"] was doing business as a livestock dealer, acquiring cattle from various sources and reselling the cattle for profit to end users and purchasers. In acquiring cattle, Eastern either purchased the cattle through livestock auctions or from individual "order buyers" or brokers such as Krantz. According to evidence presented by the Trustee, Krantz entered into multiple agreements with Eastern whereby he agreed to deliver up to 644 head of cattle to Eastern. Although Krantz could not produce written contracts, the Trustee has identified two separate Purchase Contracts which account for 572 of the delivered cattle:

The first Purchase Contract was executed on August 26, 2010, in which Krantz agreed to deliver 350 head (or 4 loads) of cattle to Eastern on October 14, 2010. The contract required a partial payment by Eastern of $14,000 upon execution of the contract. On September 2, 2010, Eastern issued Check No. 118860 in the amount of $14,000.00 payable to Krantz in accordance with the terms of the contract. The second Purchase Contract was executed on September 17, 2010, for the purchase of 200 head or 2 loads of cattle to be delivered to Eastern on October 15, 2010. That contract also required a partial payment of $8,000.00 which was issued on that date, as Check No. 120192, per the terms of the contract.

On or about October 15, 2010, the above contracted cattle were delivered to Eastern, along with an additional 71 head of cattle that Eastern purchased from Krantz on or before that date, evidenced by a Purchase Invoice of that date. Upon delivery of the cattle, Monty Haiar

["Haiar"], Eastern's local representative, prepared vouchers and faxed the invoices to Eastern for immediate payment. On October 18, 2010, Check Number 122627 in the amount of $269,701.97 was issued as payment for the balance due under the August 26, 2010 Purchase Contract and Check Number 122623 in the amount of $186,487.23 was issued as payment for the balance due under the September 17, 2010 Purchase Contract and for payment of the 71 additional head of cattle. On October 20, 2010, however, both checks were voided and replaced with a wire payment in the amount of $456,189.20 [the "Transfer"] for the cattle.

In early November, a hold was placed on Eastern's accounts with Fifth Third Bank, at which time Eastern's $32.5 million line of credit was fully drawn and over $81 million in checks written by Eastern went unpaid. [Trustee's App. Exh. 4 and 5] On November 9, 2010, Fifth Third Bank filed suit against Eastern in Ohio and Elizabeth Lynch was appointed receiver over Eastern's assets the following day. Subsequently, on December 6, 2010, this bankruptcy proceeding was commenced when certain petitioning creditors filed an involuntary bankruptcy petition against Eastern in this Court.

## Standard of Review

Summary judgment is mandated where there are no disputed issues of material fact and the movant must prevail as a matter of law. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the

mere allegations or denials in its pleadings but must affirmatively show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 323; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249.

Section 547

Section 547 of the Bankruptcy Code represents an effort to place similarly situated creditors on equal footing by giving bankruptcy trustees to ability to set aside certain transfers by debtors prior to bankruptcy which tend to prefer one creditor over another. Because depletion of the estate frustrates equitable distribution among creditors, it is the effect of the transaction, rather than the debtor's or creditor's intent, that is controlling. *See, Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir. 1981).

Under section 547(b), a trustee may generally avoid a transfer by a debtor to a creditor made within ninety days of the bankruptcy filing if the payment was made on an antecedent debt while the debtor was insolvent if the payment allowed the creditor to receive more than he would otherwise receive in a liquidation case. The Trustee has the initial burden of proving all of the elements of section 547(b). Once established, however, the burden shifts to Krantz to prove an exception under section 547(c). In this case, Krantz has asserted both that the payment

constituted a contemporaneous exchange for value under section 547(c)(1) and that the payment was made in the ordinary course of business under section 547(c)(2). Because the elements of section 547(b) have not been disputed, the Court will proceed to consider whether the challenged Transfer fits within one of the cited exceptions.

## Ordinary Course of Business

Section 547(c)(2) provides that a transfer may not be avoided if it was in payment of a debt incurred in the ordinary course of business. It must be made in the ordinary course of business of the debtor and the transferee or made according to ordinary business terms. Krantz bears the burden of proof on each of the foregoing elements by a preponderance of the evidence. *Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 390 (7th Cir. 1997).

As to whether the alleged preferential payment was consistent with the parties' prior practice, courts tend to look at several factors, including (1) the length of time the parties engaged in the type of transaction at issue; (2) whether the amount or form of the preferential transfer differed from earlier practices; (3) whether the creditor engaged in any unusual collection activity; and (4) whether the creditor took advantage of the debtor's financial condition. *See Kleven v. Household Bank F.S.B.,* 334 F.3d 638, 642 (7th Cir. 2003). To support his ordinary course defense, Krantz presented two Affidavits; his own and that of Monty Haiar. Although Krantz did not produce any independently quantifiable documentation regarding the parties' transactional history, the Trustee did present a record of the transactions between the parties in the year preceding the bankruptcy filing. Based upon the limited transactional history produced by the Trustee, the Court cannot find that payment was in the ordinary course of business.

Krantz states that he engaged in transactions with Eastern for over five years and that he usually sold cattle to Eastern. He further states that he was always paid for the cattle by wire transfer within a day or two of loading the cattle, although he did accept checks for earnest money payments. The record produced by Eastern in the year preceding the bankruptcy filing, however, does not support either of those allegations. It suggests that Krantz usually purchased cattle from Eastern and, aside from the wire transfer alleged as preferential, there was only one other wire transfer to Krantz, which was made five days prior to Eastern's ultimate demise. Because Krantz has not established a pattern of behavior, the Court is unable to conclude at this time that the wire transfer in issue was made in the ordinary course of business between these parties.

In order to except the transfer under subparagraph (B), Krantz must prove that the allegedly preferential transfer was made within the range of terms that encompasses the customary practice in the industry. *See In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993). As to the industry standard of practice, however, the Court has no evidence. Further, the Trustee notes that the challenged transaction did not consist of a simple wire transfer. Rather the transfer began as checks which were subsequently voided and replaced by the single wire transfer. That fact, the Trustee argues, takes the transaction out of the range of "ordinary". The Court would agree. Because of the various facts which remain in dispute, the Court must deny the Defendant's Motion for Summary Judgment as to the ordinary course of business defense.

Substantially Contemporaneous Exchange

Another exception to the preference rule is for transfers that the parties intended to be, and which actually are, contemporaneous. The substantially contemporaneous exception protects transactions that are not really on account of an antecedent debt and that might be

considered credit transactions otherwise. Although a fairly simple concept, there's not a bright line test. Instead, the Seventh Circuit has stated that "substantially contemporaneous" is a "flexible concept which requires a case-by-case inquiry into all relevant circumstances." *Pine Top Insurance Company v. Bank of America Nat'l Trust & Savings Association,* 969 F.2d 321, 328 (7th Cir. 1992). The circumstances to consider include the "length of delay, reason for delay, nature of the transaction, intentions of the parties, and possible risk of fraud surrounding an allegedly preferential transfer." *Id.*

As for the Debtor's delay between incurring the debt and paying the debt, the Trustee cites *Homann v. R.I.H. Acquisitions IN, LLC d/b/a Resorts East Chicago (In re Lewinski)*, 410 B.R. 828 (Bankr. N.D. Ind. 2008), for the proposition that debt is incurred on the "date upon which the debtor first becomes legally bound to pay." *Id.* at 836. In our case, the Debtor entered into separate Purchase Contracts for an approximate number of cattle to be delivered on a particular date in the future, making a partial payment at the time of contracting. Eastern was to pay the balance of the purchase price upon delivery and acceptance of the cattle. According to Haiar's Affidavit, he routinely supervised the weighing and loading of the cattle before faxing a voucher or invoice to Eastern's business office which was then payable upon receipt.

The Trustee urges the Court to find that the debt was incurred upon making the contracts yet the Seventh Circuit has expressly declined to embrace such a hard and fast rule. Such a finding, it noted, would be in conflict with at least two circuits. *See, Energy Cooperative, Inc. v. Socap International, LTD (In re Energy Cooperative, Inc.)*, 832 F.2d 997, 1001-2 (7th Cir. 1987) (citing *In re Gold Coast Seed Co.*, 751 F.2d 1118, 1119 (9th Cir. 1985) (under forward contract for commodities, buyer incurs debt at the time goods are delivered, not at the time buyer makes the contract); *In re Iowa Premium Service Co., Inc.*, 695 F.2d 1109, 1111-12 (8th Cir. 1982) (en

7

banc) (debtor incurs debt for interest on promissory note when interest falls due, not when debtor executes note); *and see In re Jolly*, 574 F.2d 349, 351 (6th Cir. 1978) (holder of an executory contract has no claim until the debtor rejects the contract)).

Another court, when considering the elements of 547(c)(1), noted that the benchmarks for the determination of the "exchanges" of 547(c) and the "antecedent debt" of 547(b) were distinctly different. In *Ames Merch. Corp. v. Revere Mills Inc. (In re Ames Dep't Stores, Inc.)*, 2010 WL 2403104, at *6, 53 Bankr.Ct. Dec. 93 (Bankr. S.D.N.Y. Jun 10, 2010), the court stated that "[w]hile 'antecedent debt' focuses on when the debtor became 'legally obligated to pay' (and therefore requires the court to look to the difference in time between the *creation of the binding obligation* and the transfer), the focus of a 547(c) "exchange" is on the time between *delivery* and the transfer." (*citing HLI Creditor Trust v. Hyundai Motor Co. (In re Hayes Lemmerz Int'l, Inc.)*, 329 B.R. 136, 140 (Bankr. D. Del. 2005) (payment due upon delivery of goods may be substantially contemporaneous, even if obligation to pay arose earlier and even if debtor has made down payment)).

Although Eastern made a partial payment at the time of contracting in order to secure the subsequent shipment of cattle, they were under no obligation to pay until such time as the specific cattle were delivered, identified, and accepted by Eastern. Based upon the particular facts of the transaction, the Court finds the date of delivery to be controlling and not the date of the Purchase Contracts. The cattle were delivered on October 15 and checks were issued three days later. Both checks were subsequently voided and replaced by wire transfer on October 20, 2010. The question before the Court is whether the Transfer was a substantially contemporaneous exchange.

In order to invoke 547(c)(1), the claimant must establish that both parties intended a contemporaneous exchange, that the exchange was in fact contemporaneous, and that the exchange was for new value. *Lewinski*, 410 B.R. 828 (citing *Harrah's Tunica Corp. v. Meeks (In re Armstrong)*, 291 F.3d 517, at 525 (8th Cir. 2002)). First, as to whether the parties "intended" the exchange to be contemporaneous, the Court will consider the Affidavits produced in support of Krantz's motion.

Both Krantz and Haiar stated that Krantz was to be paid at the time the cattle were transferred and that no extension of credit was discussed. Krantz Aff. ¶ 8-9, 12-13, 16; Haiar Aff. ¶ 6, 9-10. Krantz stated that he required immediate payment because purchasing cattle to sell to Eastern depleted his bank account. Krantz Aff. ¶ 12. As further stated in his affidavit, Haiar always inspected cattle at the time they were loaded, wrote up the invoice, and faxed it to Eastern's New Albany office for review and processing of the wire payment. Krantz Aff. ¶ -9; Haiar Aff. ¶ 7-8. Krantz understood that the entire process would result in him receiving the funds in his bank account within 1-2 days, and he considered this to be an immediate and simultaneous exchange of payment for cattle. Krantz Aff. ¶ 16. The Court concludes that the parties intended the transaction to be contemporaneous. But secondly, the exchange must actually be contemporaneous.

A check may be considered a contemporaneous exchange if it is presented for payment and paid within a reasonable time. *In re Stewart*, 274 B.R. 503 (Bankr.W.D.Ark 2002) (citing *Hall-Mark Electronics Corp. v. Sims (In re Lee)*, 179 B.R. 149, 163 (9th Cir. B.A.P. 1995)). However, legislative history also suggests that a bank's dishonor of a personal check changes the nature of the transaction and, therefore, a contemporaneous exchange defense cannot involve a dishonored check. See *Lee*, 179 B.R. at 163. That is because the transactions become credit

9

transactions upon dishonor and create an antecedent debt. Any subsequent payment, no matter how quickly made, would satisfy that antecedent debt. *Id.* Accordingly, the court in *Stewart* held that section 547(c)(1) did not protect a cashier's check, which replaced a returned check, as a substantially contemporaneous exchange for new value.

The Court finds it significant that Eastern's checks were not dishonored. They were never tendered to the bank for payment. Instead, the Debtor changed the form of payment by replacing the checks with the wire transfer. The Court has no basis to believe that the checks would not have been honored if they had been presented for payment at that time. It was almost two weeks later that a hold was placed on Eastern's accounts with Fifth Third Bank at which time its line of credit was fully drawn and its checks stopped clearing. Based upon the nature of the transaction between these parties, the Court finds that the Transfer was a substantially contemporaneous exchange. The parties clearly intended the exchange to be contemporaneous and it was, in fact, contemporaneous.

In this case, as in the *Pine Top* decision, the chronology of events and the surrounding circumstances make apparent that the Transfer does not rise to the level of a preference as envisioned by section 547. Although Eastern's checks were voided and replaced with the wire transfer, it does not change the fact that Eastern routinely paid for cattle within a few days of loading the cattle. The purpose of the preference statute is to prevent debtors, on the eve of bankruptcy, from favoring creditors with payment. *See, e.g., In re Tolono Pizza Products Corp.*, 3 F.3d 1029 (7th Cir. 1993). In this instance, Eastern was conducting business as usual right up to November 2, when the Bank placed a hold on Eastern's accounts. As such, the Court finds that the transfer at issue does not fall within the spirit of 11 U.S.C. § 547 as a preferential transfer.

Section 548

The Trustee also alleged that the wire transfer constituted a "fraudulent transfer" as defined in section 548 of the Bankruptcy Code. The Trustee bears the burden of proving that the transfer was (1) made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted" or (2) that the debtor "received less than reasonably equivalent value" in exchange for the transfer. The Trustee made no specific allegation to support actual intent and the Court finds no evidence to suggest that Eastern received less than reasonably equivalent value in exchange for the cattle.

The Trustee did not respond to Krantz' argument for summary judgment on his section 548 claim. In his Reply in Support of Motion for Summary Judgment, Krantz points out that "summary judgment is the 'put up or shut up' moment in the life of a case." *Fed. Communications Comm. v. Airadigm Comms., Inc. (In re Airadigm Comms, Inc.)*, 616 F.3d 642, 657 (7th Cir. 2010) (*citing Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010)). The Court agrees. Because the burden of proof rests with the Trustee and, there being no evidence of fraud and no suggestion that the price paid for the cattle was anything other than the going fair market price, the Court grants the Defendant's Motion for Summary Judgment on the Trustee's section 548 claim.

Conclusion

Based upon the undisputed facts, the Court finds that the Defendant's Motion for Summary Judgment should be, and accordingly is, **GRANTED**. Judgment shall be entered in favor of the Defendant by separate Order in accordance with the foregoing.

**SO ORDERED AND ADJUDGED.**

###